No. 18,361.

ELIZABETH G. NELSON, ET AL. *v.* DISTRICT COURT OF
ARAPAHOE COUNTY, HON. MARTIN P. MILLER, JUDGE.
(320 P. [2d] 957)

Decided December 16, 1957.   Rehearing denied February 17, 1958.

Mr. Darwin W. Coit, Mr. John E. Walberg, for petitioners.

Messrs. Kripke & McLean, Messrs. Swofford, Schroeder & Shankland, for respondents.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

This is an original proceeding in the nature of prohibition in which one Elizabeth G. Nelson and John E. Walberg, Attorney, seek an order of this Court prohibiting the District Court of the County of Arapahoe and the Hon. Martin P. Miller, Judge thereof, from taking any further proceedings in Civil Action No. 12698, pend-

ing in said Court, and in which action Rose Sprofero, Shirley M. Maroon, and Mary Lou Cacioppo are plaintiffs, and Elizabeth L. Nelson is named as defendant. In the action brought by the above named plaintiffs, each seeks to recover from the defendant Elizabeth L. Nelson, damages for personal injuries arising out of the alleged negligence of the said Elizabeth L. Nelson in driving an automobile on U. S. Highway #85-#87, about three miles north of Pueblo, on August 18, 1956, and causing it to collide with an automobile in which plaintiffs were then riding as passengers.

Plaintiffs' action was commenced on April 25, 1957; on May 14, 1957, attorneys appeared specially for "the defendant designated by the plaintiffs as Elizabeth L. Nelson" and moved to quash the purported service of summons and return thereof. The motion states that the purported service and return are a nullity, but sets forth *no facts* as the basis for the legal conclusion that the service and return are a nullity. Hearing on the motion was had May 20, 1957, at which time amendment of the return of service was made, documentary evidence considered, and an unsworn statement of pertinent facts made by plaintiffs' counsel, arguments presented and several questions of law ruled upon by the trial court. The court then continued the matter until June 3, 1957, for further hearing to determine the question of defendant's residency. Near the close of the hearing the court warned counsel, John L. Walberg, petitioner herein, in the following language:

"THE COURT: All right. If it is the opinion of the Court that this is a wholly frivolous matter — and I have no way of knowing; I presume it is not and trust it is not — if it is the opinion of the Court that this is a frivolous matter I will assess the costs and a reasonable attorney fee against the defendant and his counsel."

The June third hearing was continued to June 17, 1957, at which time documentary evidence as to residency was produced by the plaintiffs, and the patrolman

470

who had investigated the accident, having been subpoenaed to appear as a witness for the plaintiffs, made a trip from Pueblo to Denver and testified as to the accident and as to defendant's residence. This was followed by more argument and a statement of defendant's counsel that he had no testimony, *none whatsoever,* as to residency. Thereupon the court denied the motion to quash and stated:

"THE COURT: All right. $250.00 attorney fees to the law firm of Kripke & McLean, and all costs actually expended herein including the service. Mr. Walberg, I don't want to hear another word on this. Just let me make my ruling, you make your objection, and let it go at that. I indicated to you the last time we had a hearing that this was a very busy court, that we could not stand for frivolous, dilatory contentions without merit, and when you contend to this Court, as you did, seriously that the defendant in this particular case is not the same person who was involved in the accident, when you contend that she was not the same person that was served, when you make contentions that the middle initial is a matter of substance, that it could be somebody in New York, you are trifling not only with the dignity of this Court but with the time of all the attorneys waiting in court to have their matters heard. We have spent 50 minutes today, 45 minutes last time, needlessly, without any reason, without any merit to your contentions. You don't have a single bit of evidence. The Court will take under advisement as to whether or not the Court should punish you for contempt as well.

"The costs must be filed in cash with this Court within ten days or paid directly to the plaintiff's attorney within ten days of this hearing, otherwise you may not proceed further herein until that is done."

The actions of the trial court, as indicated by the above quotations from the record, were no doubt the motivating cause of this proceeding. An order to show cause was issued and served on respondents, who filed an

answer admitting most of the facts set forth in the petition in this court, and alleged other matters. All pertinent matters are now of record and not in dispute.

Plaintiffs in the trial court undertook to subject Elizabeth *L.* Nelson to the jurisdiction of the District Court of Arapahoe County by process undertaken to be served and returned pursuant to C.R.S. '53, 13-8-1, et seq. Nelson does not complain of the form or substance of the summons, but relies entirely on lack of service and return thereof.

■ At the outset, and in view of contentions presented in the trial court and here, it may be well to make a few observations relating to the purpose of a summons, the service thereof and a return thereof:

"An action is commenced (1) by filing a complaint with the court, or (2) by the service of a summons * * *. The court shall have jurisdiction from the time of filing the complaint or service of the summons." *Rule 3, R.C.P.*

Compliance with this rule gives the court jurisdiction over the plaintiffs and the action, but not over the person of the defendant. Jurisdiction over the defendant's person is acquired through legal service of process — a summons in civil actions of the type involved herein. Courts of Colorado can acquire jurisdiction over the person of nonresidents served outside of Colorado by pursuing the procedure prescribed by C.R.S. '53, 13-8-1, et seq. Such jurisdiction can be acquired over a *nonresident* only in *actions against him* growing out of an *accident* or *collision* in which said *nonresident may be involved* while operating a *motor vehicle within this state at a time when he was a nonresident.*

■ The statute serves a very necessary and useful purpose, and, as we interpret it, we first assume that summons has been issued and complaint filed seeking recovery of damages arising out of an accident or collision in which the defendant, at the time of such accident, was a nonresident of Colorado, and was involved

while operating a motor vehicle within Colorado. The following steps must then be taken by the plaintiff in order to subject the defendant to the jurisdiction of the court:

Leave a copy of the "process" (to be on the safe side, summons and complaint) with a fee of $2.00 with the Secretary of State, "or in his office." Such service shall be sufficient; provided:

(a) "notice of such service and a copy of the process [summons and complaint] are *forthwith* [presumably following service on the Secretary of State] sent by registered mail *by the plaintiff* to the defendant [outside of Colorado] * * *."

From this point on the postal department takes over as plaintiff's agent and hands the registered letter to the defendant outside of Colorado and has the defendant sign a receipt therefor. At this point the service is complete and the defendant is subject to the jurisdiction of the court. Further procedures as outlined by the statute go only to the return of service and the method of proof of service and have nothing to do with the acquisition of jurisdiction over the person of the defendant for the purposes of the action.

There is no question that the statute is in derogation of the common law; strict construction and strict compliance are required.

Bearing in mind the purpose of the summons and complaint and the service thereof, we conclude that on completion of service on the Secretary of State and the payment of the fee, and the mailing by registered mail and delivery outside of Colorado by the Post Office Department to the defendant of an envelope in which is contained a copy of the complaint and summons, together with notice that the Secretary of State has been served, and obtaining from defendant a registry receipt showing receipt thereof by defendant, completes the service. As of that time defendant becomes subject to the jurisdiction of the court.

■ Failure of the plaintiff to comply with the procedures prescribed following completion of service does not add to or detract from the validity of the service. These procedures deal with the proof of service and are vital if the plaintiff appears in court and seeks to prove service entitling him to a judgment by default. In such event the court should insist upon strict compliance with the statutory provisions for the return of service, as well as the service itself, before finding as a matter of fact and law that the defendant is subject to the jurisdiction of the court and in default.

■ It is the process and service thereof that confers jurisdiction. The return is no part of the service, but evidence only of such service. The general rule is stated as follows:

"A return of process, as distinguished from the process itself, is merely the evidence by which the court is informed that defendant has been served or given notice to appear in court. It has been said that the citation is the thing, so to speak, while the return is merely evidence thereof. One may be valid and the other incomplete; and a citation may be fatally defective notwithstanding the return indicates that a legal citation has been had.

\* \* \*

"It is generally considered that the service of process, rather than a return or proof of service, is the jurisdictional requisite, and that the court acquires jurisdiction, if at all, through proper service, and not through the return thereof. It has been held that in the absence of statutory requirement thereof a return need not be made, and if made in such case has only the force of a private memorandum of the person making it. In order, however, that service may be shown to have been duly made, a proper return is ordinarily necessary, and without it the trial court is not authorized to find that it has jurisdiction; and there is authority to the effect that legal proof of the service of a summons, whether per-

sonally or by publication, is a jurisdictional matter." — 72 C.J.S., page 1129.

■ There may be valid service and a *defective return* or there may be *invalid service* and a *return showing valid service.* The purpose of the return is to enable the trial judge to make an intelligent finding that the court has acquired jurisdiction through proper process and service thereof, or has not acquired jurisdiction because of defects in the process or the service thereof. The return does not add to or detract from the validity of the process or the service thereof.

Petitioners place great reliance upon *Carlson v. District Court,* 116 Colo. 330, 180 P. (2d) 525. Carlson in an original proceeding sought to prohibit a trial court from further proceeding in a case where service had been undertaken pursuant to C.R.S. '53, 13-8-1, et seq. In that case the defendant in the trial court, in his motion to quash service, claimed residence in Colorado at the time of the accident and contended that procedures provided by C.R.S. '53, 13-8-1, et seq., were ineffectual to acquire jurisdiction over a defendant who was a resident of Colorado at the time of the accident or collision, but who, at the time of the attempted service, was a nonresident of Colorado. The uncontradicted evidence in support of Carlson's motion to quash established beyond any doubt that the defendant was a resident of Colorado at the time of the accident and collision. The writ of prohibition was made permanent. The court's holding that: " * * * The record considered, Carlson was not a nonresident of the state of Colorado on December 4, 1944 [the time of the accident], but a resident thereof. He was, therefore, not subject to the substituted service of process provided by said section 48 (1) [now C.R.S. '53, 13-8-1], and the Court had no jurisdiction to entertain Fodor's action," is manifestly correct. In the Carlson case, defendant's counsel presented to the trial court his motion to quash, and properly and commendably set forth therein the factual reasons therefor; set forth the

fact that Carlson moved from Illinois to Leadville, Colorado, on July 18, 1944, and on that date he became a resident of Leadville, Colorado, where he served as pastor of the First Evangelical Lutheran Church of Leadville from July 18, 1944, until May 28, 1945, at which time he accepted a pastorate in his church at Rochester, New York; thereby and at that time he terminated his Colorado residence; that he was a resident of Leadville, Colorado, during the period July 18, 1944, to May 28, 1945, and was a resident of Colorado on December 4, 1944, the date of the accident. This motion was supported by an affidavit of Carlson, also an affidavit of his counsel. The *Carlson* case and the *Nelson* case present a complete antithesis. Petitioner Walberg, in arguing with the trial judge, stated:

"I wish the Court to proceed in the manner outlined by the Supreme Court in the Carlson case * * *."

Had counsel so proceeded, it is unlikely that this proceeding would ever have developed and quite likely that the parties to the action would have had their respective rights and duties judicially determined in a candid and orderly manner.

A motion to quash the summons, service or return serves to notify the court that, even though the plaintiff may have a just cause of action, the defendant has not been properly brought into court so as to require him to answer to the merits. Illegality, apparent from matters of record, should be pointed out in the motion. In case defendant, moving to quash, relies upon facts dehors the record, then those facts should be set forth in the motion, and, as evidence of good faith, and that the motion is not filed frivolously or for the sole purpose of delay, the facts relied upon should be verified by affidavit, the defendant thereby indicating his belief that, on hearing, he can prove the facts alleged and relied upon.

Counsel urge that there was *no proof* of the nonresidency of the designated defendant on the date of the

alleged accident. The record shows the following claimed proof: "Exhibit B," being copy of a "special delivery registered, deliver to addressee only, return receipt requested," letter from the law offices of Kripke & McLean, 255 Clayton Street, Denver, dated April 25, 1956, directed to Mrs. Elizabeth L. Nelson, 800 Oakwood, Jackson, Mississippi. This letter sets forth the names of the parties and the court in which the action is pending, and states:

"Enclosed is a true copy of summons and complaint for damages which have been filed against you. Service upon you has been obtained by service upon the Secretary of State of the State of Colorado in compliance with pertinent Colorado statutes."

The letter is signed by Kenneth N. Kripke. Attached thereto is: "Recept for registered article No. 304243," dated at Denver, Colorado, Capitol Hill Station, April 26, 1957, showing name and address of addressee, "Mrs. Eliz. L. Nelson, 800 Oakwood, Jackson, Miss."

"Exhibit C" is an affidavit of Kenneth N. Kripke to the effect that he had talked with Patrolman Rodosevich and was by him told that he, Rodosevich, had investigated the accident, interviewed Elizabeth L. Nelson and made a report thereof, and that Elizabeth L. Nelson had Mississippi driver's license 764825 showing her address 800 Oakwood, Jackson, Mississippi; the 1951 Chevrolet sedan she was driving bore 1956 Mississippi license plates #369-796, and that Elizabeth L. Nelson had told him that she was a nonresident of Colorado and was a resident of the State of Mississippi at the time of the accident, and that as a matter of courtesy; extended to out-of-state drivers, he had expedited hearing in Pueblo on charges of careless driving preferred against her. Kripke, in his affidavit, further states that on May 20, 1956, he placed a person to person long distance call to Mrs. Elizabeth L. Nelson, 800 Oakwood, Jackson, Mississippi; that he heard a voice, presumably that of the Jackson telephone operator, state that there was no telephone

listed in that name, but that there was a telephone listed at that address in the name of Louis F. Nelson, and that the number was 2-4824; which number was rung and an unknown person answered and, on inquiring for Elizabeth L. Nelson, stated that she was at work and that the telephone at the place of her work was No. 3-8801; on further inquiry, this unknown person stated that only one Elizabeth Nelson lived at that address.

In the record before us appears an affidavit of compliance in which Kenneth N. Kripke swears:

"That the defendant Elizabeth L. Nelson was a non-resident of the state of Colorado at the time of the collision which is the subject matter of this action."

To this affidavit is attached registry return receipt bearing in pencil the signature "Elizabeth G. Nelson — date of delivery _____ 19 _____." On the reverse side of this card is the address "Kripke & McLean, 255 Clayton Street, Denver 6, Colorado," postmarked "Jackson, Mississippi, April 29, 1956, 9:30 P.M. Registered Article No. 304243."

On June 17, 1957, sworn testimony of Ernest Rodosevich was taken. He testified that he appeared pursuant to subpoena to appear and testify and produce his records concerning an accident which occurred August 18, 1956. He was subpoenaed by the plaintiffs. He testified, in substance, as follows:

To begin with Mrs. Nelson was involved in an accident which I covered, and the conversation that took place was in regard to her residence, her driver's license, car registration, ownership and also what had taken place at the time of the accident. She gave me her name Elizabeth L. Nelson; she spoke with a deep southern accent; she gave me her address 800 Oakwood, Jackson, Mississippi; she gave me her driver's license #764825, State of Mississippi, expiration date 3/31/57; she gave me the motor vehicle license number Mississippi 369-796; she stated she was the operator of the vehicle; she was about 51 years old, white, about 5 feet, 4 inches tall; that she

was from Jackson, Mississippi, on vacation in Colorado. The accident occurred on Saturday. She was summoned into court in Pueblo first thing on Monday, a procedure reserved for out-of-state drivers.

Also in the record is an affidavit from one J. A. Travis, Jr., attorney at law, 504 Electric Building, Jackson, Mississippi, to the effect that he had contacted Mrs. Elizabeth Nelson at 800 Oakwood, Jackson, Mississippi, on March 15, 1957, and that she indicated she had been in an accident near Pueblo, August 18, 1956, and that there is only one Elizabeth Nelson residing at 800 Oakwood, Jackson, Mississippi. There is also in the record an affidavit of L. E. Birdsong, Director, Drivers' License Division, Mississippi Department of Public Safety, Jackson, Mississippi. He states that the records of his office show that on August 18, 1956, Mrs. Elizabeth Galceran Nelson, of 800 Oakwood, Jackson, Mississippi, held Mississippi Driver's License number 764825, and that it expired March 31, 1957, at which time Mrs. Nelson renewed her driver's license and was assigned the same number, and no other person holds the same number in Mississippi.

After presentation of the above, the following occurred:

"THE COURT: * * * do you have any testimony now, Mr. Walberg? MR. WALBERG: I have no testimony, your honor. THE COURT: None whatsoever? MR. WALBERG: No."

It may well be that the above evidence did not materially, or at all, add to defendant's store of knowledge as to her place of residence; it did add to the court's knowledge.

The trial court properly found that the evidence outlined above made out a prima facie showing of the nonresidence of the defendant and was sufficient to shift the burden of going forward to the defendant.

Petitioners point out that the letter written by plaintiffs' attorney, which purports to be "Notice of such

service" as required by C.R.S. '53, 13-8-1, et seq., is dated April 25, and uses the words: "Service upon you *has been* obtained by service upon the Secretary of State * * * " whereas in truth and in fact service was not made on the Secretary of State until April 26, 1956. The record shows that the letter dated April 25, 1956, was mailed in Denver on the 26th; the Secretary of State was served on the 26th. The notice must be sent *forthwith* after service of the Secretary of State. Without seeking to determine what the legislature meant when it used the word "forthwith" we agree with the ruling of the trial court that under the facts presented this objection is without merit.

Next, counsel urge that the statute requires that the notice by registered mail containing the summons and complaint *must* be sent by *plaintiff in person* and not by his attorney; that plaintiff and not his attorney *must* make the affidavit of compliance. The trial court was not, nor are we, favorably impressed with this contention. Just who licks the stamp and who deposits the letter is quite immaterial. Under counsel's contentions, a year-old child would be without recourse because of lack of ability to prepare the letter, lick the stamp, and drop it in the mail box; a corporation would be without recourse because it can act only through its agents and attorneys.

Counsel further contend that the notice is false in that no action was filed until five days after the date of notice, as evidenced by the court filing stamp on the complaint and summons. Counsel overlook or disregard R.C.P., 3 (a):

"A civil action is commenced (1) * * * or (2) by the service of a summons."

Counsel in the trial court and in this court make much of the fact that the complaint names as defendant Elizabeth *L.* Nelson, whereas the receipt for the registered letter addressed to Elizabeth *L.* Nelson, 800 Oakwood, Jackson, Mississippi, is signed by Elizabeth *G.*

480

Nelson. Plaintiffs describe Elizabeth L. Nelson as that person who "on August 18, 1956, on a public highway designated as U. S. #85-#87, approximately two and one-half (2½) miles south of bridge K-18-C and approximately 3 miles north of the City of Pueblo * * * negligently drove an automobile thereby causing it to collide with an automobile in which the plaintiffs, and each of them, were then and there riding as passengers."

The middle initial is not the test; it is no part of a person's name.

"The middle initial is no part of a person's name, according to the weight of authority, and, therefore, no importance attaches to its omission, or to the insertion of an erroneous initial in place of the correct one. A similar mistake made by the insertion of a middle initial where the correct name contains no middle initial is likewise regarded as immaterial. * * *." — 42 Am. Jur., page 86, §99.

■ The trial court, in order to intelligently rule on the motion to quash, had to know whether the person served with notice at 800 Oakwood, Jackson, Mississippi, was the same person driving the car near Pueblo, August 18, 1956, which collided with plaintiffs' car. A second hearing was had June 17, 1957, for the purpose of resolving this question; at that hearing petitioner Walberg, acting in behalf of defendant, participated as follows:

"MR. WALBERG: I don't know that it is even the same person [the person who signed the receipt for the registered letter] that was involved in the accident in the State of Colorado as alleged. * * * I challenge also the fact that there is no proof that the person mentioned as the defendant in this action was one and the same person who allegedly received some process or some notice in the State of Mississippi * * *. THE COURT: [addressing Mr. Walberg] Are you convinced that there are two separate persons? MR. WALBERG: I believe * * * that unless the person who received the process in the State of Mississippi is the same person, has the same

name, as the person who is named defendant * * * and if we find some person in the State of Mississippi and we send them a notice and that person's middle name. or middle initial varies from the middle initial of the person who is named as defendant in this action * * *, I believe that the notice would not be sufficient. THE COURT: * * * as I recall you stated to the court * * * it might be someone in New York who was served for all you knew. MR. WALBERG: Those statements were made in jest * * *. [addressing the Court] That is true, but can't you agree that in the exercise of diligence counsel [meaning plaintiffs' counsel] may find somebody in the State of Mississippi whose name was the same as defendant's in this action?"

Following this colloquy, the court assessed attorney fees and costs against Walberg. The trial court erred in assessing attorney fees of $250.00 " * * * and all costs actually expended herein including the service," as well as in ordering the $250.00 to be paid to the law firm of Kripke & McLean and the costs to be paid to the court or Kripke & McLean within ten days — otherwise "counsel [Walberg] may not proceed further herein until that is done." We find no authority for this order. The court's order is apparently based on authority allegedly granted by Rule 11, R.C.P. This rule grants authority for *subjecting an attorney to appropriate disciplinary action.* In making its order for attorney fees and costs and at the close thereof, the court said:

" * * * The Court will take under advisement as to whether or not the Court should punish you for contempt as well."

The matter of punishment for contempt, disciplinary action under Rule 11, now being held under advisement, there is no authority for the order assessing attorney fees and costs. The trial court is directed to vacate its order assessing attorney fees and costs against petitioner Walberg. Nothing in this opinion shall be considered as withdrawal from the trial judge's future consideration

the matter taken under advisement — "whether or not the Court should punish you for contempt as well." That matter is to be resolved by the trial judge, uninfluenced by anything herein contained, nor do we make any finding, or even intimate, what costs should be assessed or against whom. Assessment of costs should await final judgment and become a part thereof and thus subject to review.

Except as above provided, the writ is dissolved. Petitioners shall pay to respondents their costs herein consisting of docket fee and cost of printing brief.