## No. 20,618.

MERLIN G. CLEMENS, ET AL., *v.* THE DISTRICT COURT OF THE CITY AND COUNTY OF DENVER, ET AL.

(390 P. [2d] 83)

Decided February 17, 1964.    Rehearing denied March 23, 1964.

Messrs. Wood, Ris and Hames, Mr. Thomas T. Crumpacker, for petitioners.

Mr. Joseph N. Lilly, for respondent Don D. Bowman;

Mr. Morris Rifkin, Mr. Robert J. Ring, for respondents Samuel G. Whatley and Rose Marie Whatley.

Mr. Norman E. Berman, Amicus Curiae.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

On August 7, 1962, Samuel G. Whatley and Rose Marie Whatley commenced an action in the District Court of the City and County of Denver wherein they sought to recover damages for injuries allegedly suffered in an automobile collision in Denver on September 29, 1961. They named as defendants Barbara Bowers, owner, and Merlin G. Clemens, driver of the vehicle which collided with the Whatley vehicle.

Service of process upon the defendants was undertaken pursuant to Chapter 75, Session Laws 1961, being C.R.S. '53, as amended, 13-8-5 to 10 inclusive, which, among other things, provides:

"13-8-5. — *Definition of terms.* — When used in sections 13-8-5 through 13-8-10, the following terms shall have the following meanings:

"(1) A 'driver' is the owner or operator of a motor vehicle.

"(2) An 'accident' is any occurrence in the state of Colorado involving a motor vehicle which results in damage to property or injury or death to a person.

\* \* \*

"13-8-8. — *Service of process.* — When *any civil action* which pertains to an *accident is* commenced \* \* \* the court shall, upon verified motion *giving the last known address of the defendant* and setting forth the circumstances by which the plaintiff is entitled to serve the secretary of state in accordance with the provisions of this article and *upon finding that such service is proper, enter an order ex parte setting forth the last known address of the defendant* and authorizing service to be made on the secretary of state. Service shall be made by delivering two copies of the process, complaint, motion and order of court to the secretary of state, his deputy or assistant, \* \* \* . Notice of such service and a copy of each instrument so served shall *forthwith* be sent by the secretary of state *by certified or registered mail,* addressed to the defendant at his address given in the order of court, *with return receipt requested. Promptly* after such mailing the secretary of state shall file with the clerk of the court a certificate showing such mailing. Service shall be complete thirty days after service of process on the secretary of state as provided in this section." (Emphasis supplied.)

Prior to the expiration of thirty days after service of process upon the secretary of state, the defendants appeared specially and moved to quash the service of process and the return, contending generally that procedures pursued were not such as to bring them within the jurisdiction of the court, and that Chapter 75 is unconstitutional. The district court denied the motion, whereupon the defendants brought this original proceeding, wherein we are called upon to determine whether service of process, had in conformity with said Chapter 75, vested the court issuing such process with jurisdiction over the persons so served as to warrant the entry

of a judgment in personam against them or either of them.

We find the language contained in 13-8-5 as applied to the facts here presented as pure fiction. To define a "driver" as the "owner" or the "owner" as the "driver" changes nothing. Often a driver, owner and operator are one and the same person. Often they are not.

In this case, Barbara Bowers is the *owner,* she is not the *driver.* Merlin G. Clemens is the *driver,* he is not the *owner.* In resolving the problems presented we treat the parties from the standpoint of realism, rather than fancy or fiction, as prescribed by Chapter 75.

In the case before us, Barbara Bowers has never been a resident of Colorado; she owns a motor vehicle which she loaned to Clemens; she did not drive the vehicle; Clemens drove the same for his own purposes, not as agent for Barbara or for her benefit or in her behalf. She was not in the vehicle at the time of the accident and for all that appears in the record was not even in Colorado.

In the early case of *Pennoyer v. Neff,* 95 U. S. 714, it was said:

" * * * Process from the tribunals of one State cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the State where the tribunal sits cannot create any greater obligation upon the nonresident to appear. Process sent to him out of the State, and process published within it, are equally unavailing in proceedings to establish his personal liability."

Since this pronouncement there have been vast changes in the law. The advent of motor vehicles and the use of highways by nonresident motorists, the ease of travel and other considerations have prompted legislative bodies and courts in certain situations to modify and relax the rules laid down in *Pennoyer v. Neff,* supra.

The United States Supreme Court, in *International Shoe Co. v. Washington,* 326 U. S. 310, 66 S. Ct. 154, has stated the tests to be applied in determining whether courts have or may acquire jurisdiction over nonresidents such as to warrant entry of a judgment in personam against them. There it is stated:

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff,* 95 U. S. 714, 733. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer,* 311 U. S. 457, 463. See Holmes, J., in *McDonald v. Mabee,* 243 U. S. 90, 91. Compare *Hoopeston Canning Co. v. Cullen,* 318 U. S. 313, 316, 319. See *Blackmer v. United States,* 284 U. S. 421; *Hess v. Pawloski,* 274 U. S. 352; *Young v. Masci,* 289 U. S. 253.

\* \* \*

" \* \* \* Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. *Pennoyer v. Neff,* supra; *Minnesota Commercial Assn. v. Benn,* 261 U. S. 140."

The language in Chapter 75 providing for substituted service of process is broad enough to warrant

resort to such service on a nonresident owner of a motor vehicle involved in an accident in Colorado where the owner has never been in Colorado, and where the owner has no contacts or ties, minimal or otherwise, with Colorado — the status of Barbara Bowers, defendant in the trial court.

In such a situation Colorado cannot, except by personal service of process on the defendant, in Colorado, acquire such jurisdiction over such nonresident owner as to vest the court with jurisdiction to enter a judgment *in personam* against her.

In *Hanson v. Denckla,* 357 U. S. 235, it is stated:

"*In personam jurisdiction.* Appellees' stronger argument is for *in personam* jurisdiction over the Delaware trustee. They urge that the circumstances of this case amount to sufficient affiliation with the State of Florida to empower its courts to exercise personal jurisdiction over this nonresident defendant. Principal reliance is placed upon McGee v. International Life Ins. Co., 355 U. S. 220, 78 S.Ct., 199, 2 L.Ed. 2d 223. In McGee the Court noted the trend of expanding personal jurisdiction over nonresidents. As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed. 2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of

territorial limitations on the power of the respective States. *However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him.* See International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95." (Emphasis supplied.)

◼ Provisions of Chapter 75 providing for substituted service on owners with no contacts are lacking in due process, unconstitutional and void.

It is not contended that the legislature may not provide for substituted service upon a nonresident driver of a motor vehicle involved in an accident in Colorado. In 1937 the Colorado General Assembly adopted rather comprehensive legislation so providing — C.R.S. '53, 13-8-1, 2, 3, 4, as amended by Chapter 83, Session Laws 1957. The constitutionality of that legislation has not been questioned before this court, though the validity of procedures prescribed for service of process was considered and passed upon by this court in *Morrison v. District Court,* 143 Colo. 514, 355 P. (2d) 660; *Warwick v. District Court,* 129 Colo. 300, 269 P. (2d) 704; *Nelson v. District Court,* 136 Colo. 467, 320 P. (2d) 959. Much that has been said in the foregoing cases is applicable to the situation here.

We now turn our attention to the procedures prescribed by Chapter 75 for notifying defendants, whether owners, drivers, nonresidents or residents, who have remained away from Colorado for a period of ninety days, of the fact that they have been sued.

◼ Procedures must be such as are reasonably calculated to apprise the defendants of the action pending against them and to afford to them an opportunity to be heard.

Due process in having one's rights and duties judicially determined contemplates notice of the proceedings.

In 42 Am. Jur., Process, §§ 65, 67, pages 54, 57, we find the following statement:

"§ 65. *Provisions for Notice.* — The object of all process, whether by personal notice or by publication, is to give the person to be affected by the judgment sought notice thereof and an opportunity to defend. The efficacy of substituted or constructive service of process, when allowable, rests upon the presumption that notice will be given in a manner which is calculated to impart knowledge to the person who is to be notified. Its adequacy, so far as due process of law is concerned, is dependent on whether or not the particular form of service is reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard. In providing for substituted or constructive service on individuals, a statute must incorporate provisions reasonably designed to give the defendant notice of the initiation of litigation against him or a reasonable method of imparting such notice, otherwise it is not consistent with the requirement of due process of law. To dispense with personal service, the substitute that is most likely to reach the defendant is the least that ought to be required if substantial justice is to be done."

"§ 67. *Residents of State.* — * * * . If actual service is impracticable, nothing more is essential to the due process of law than that the service provided for be such as in the exercise of legislative discretion shall have been found most suitable to accomplish the purpose of actual service. As frequently pointed out, there would be indefinite delays in administration of justice, the equivalent of a denial of justice, if some other mode of notice than the personal service of process was not authorized. *In these cases, the legislative power must elect between the evils of delaying, denying, or embarrassing the administration of justice, and the opposite evils of the probability or possibility of a judgment or decree rendered upon an ex parte hearing.* However, many courts have reached a contrary conclusion, either in avowed

repudiation of the general rule or in attempted differentiation of the particular facts or circumstances or the particular mode of constructive service involved." (Emphasis supplied.)

In *Hess v. Pawloski,* 274 U. S. 352, 71 L. Ed. 1091, 47 S. Ct. 632, the Supreme Court of the United States held that a nonresident motorist involved in a motor vehicle accident could be subjected to the jurisdiction of the Massachusetts courts by substituted service in compliance with the state which required service on the "registrar" and provides that such service shall be valid, provided:

" * * * that notice of such service and a copy of the process are forthwith sent by *registered mail* by the plaintiff to the defendant, *and the defendant's return receipt* and the plaintiff's affidavit of compliance herewith *are appended to the writ* and entered with the declaration... * * * ." (Emphasis supplied.)

In upholding the statute providing for substituted service and the provisions for notice, the court said:

" * * * The measure in question operates to require a nonresident to answer for his conduct in the state where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights. * * * . It is required that he shall actually receive and receipt for notice of the service and a copy of the process. And it contemplates such continuances as may be found necessary to give reasonable time and opportunity for defense. * * * . The state's power to regulate the use of its highways extends to their use by nonresidents as well as by residents. Hendrick v. Maryland, 235 U. S. 610, 622, 35 S. Ct. 140, 59 L. Ed. 385. And, in advance of the operation of a motor vehicle on its highway by a nonresident, the state may require him to appoint one of its officials as his agent on whom process may be served in proceedings growing out of such use. Kane v. New Jersey, 242 U. S. 160, 167, 37 S. Ct. 30, 61 L. Ed. 222. That case

recognizes power of the state to exclude a nonresident until the formal appointment is made. And, having the power so to exclude, the state may declare that the use of the highway by the nonresident is the equivalent of the appointment of the registrar as agent on whom process may be served. * * * ."

Compliance with the means of service provided by the Massachusetts statute assures the defendant of actual personal knowledge of the pendency of the action and goes far beyond the requirements of the foregoing general rule and the requirements of many other states.

In *Wuchter v. Pizzutti*, 276 U. S. 13, 72 L. Ed. 446, 48 S. Ct. 259, the court reviewed a decision of the Court of Errors and Appeals of New Jersey, *Pizzutti v. Wuchter,* 103 N. J. L. 130, 134 Atl. 727, where a nonresident of New Jersey was made a party defendant in a suit for damages suffered by plaintiff by reason of a motor vehicle accident. The New Jersey statute provided that any nonresident driver of a motor vehicle in New Jersey " * * * shall * * * make * * * the secretary of state * * * his * * * agent for the acceptance of process in any civil suit * * * arising out of * * * any accident * * * occurring within the state * * * ."

The statute provided that process be served on the secretary of state. The statute contained no provision directing the secretary of state as to what disposition he should make of the papers served upon him.

The defendant made no appearance in the trial court and a judgment was rendered against him. This judgment was sustained by the Court of Errors and Appeals. The Court of Errors and Appeals did not discuss the question of the sufficiency of notice but did hold the statute constitutional. On appeal to the U. S. Supreme Court the judgment was reversed and the statute held in contravention of the Fourteenth Amendment requiring due process. Among other things the court said:

"The question made in the present case is whether a statute, making the secretary of state the person to

receive the process, must, in order to be valid, contain a provision making it reasonably probable that notice of the service on the secretary will be communicated to the nonresident defendant who is sued. Chapter 232 of the Laws of 1924 makes no such requirement * * * . *We think that a law with the effect of this one should make a reasonable provision for such probable communication.* * * * the enforced acceptance of the service of process on a state officer by the defendant would not be fair or due process unless such officer or the plaintiff is required to mail the notice to the defendant, or to advise him, by some written communication, so as to make it reasonably probable that he will receive actual notice. Otherwise, where the service of summons is limited to a service of the secretary of state or some officer of the state, without more, it will be entirely possible for a person injured to sue any nonresident he chooses, and through service upon the state official obtain a default judgment against a nonresident who has never been in the state, who had nothing to do with the accident, or whose automobile having been in the state has never injured anybody. A provision of law for service that leaves open such a clear opportunity for the commission of fraud (Heinemann v. Pier, 110 Wis. 185, 85 N. W. 646) or injustice is not a reasonable provision, and in the case supposed would certainly be depriving a defendant of his property without due process of law. * * * .

\* \* \*

"But it is said that the defendant here had actual notice by service out of New Jersey in Pennsylvania. He did not, however, appear in the cause and such notice was not required by the statute. Not having been directed by the statute it cannot, therefore, supply constitutional validity to the statute or to service under it. * * * ." (Emphasis supplied.)

In the Massachusetts and New Jersey statutes we have the two extremes. Massachusetts assures notice to the

defendant. New Jersey does not require any effort to get notice to reach the defendant, and if a nonresident learned through New Jersey procedures that he had been sued it would be a miracle.

Between these two extremes most states have adopted legislation setting up procedures for service of process supposedly designed to provide a "mode of service * * * adapted to inform the defendant of the pendency of the proceedings and to give him an opportunity to appear and defend." 42 Am. Jur., § 67, page 57.

In *McDonald v. Mabee*, 243 U. S. 90, 61 L. Ed. 608, 37 S. Ct. 343, Mr. Justice Holmes said:

" * * * No doubt there may be some extension of the means of acquiring jurisdiction beyond service or appearance, but the foundation should be borne in mind. Subject to its conception of sovereignty even the common law required a judgment not to be contrary to natural justice * * * . And in states bound together by a Constitution and subject to the 14th Amendment, great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact. * * * .

\* \* \*

" * * * To dispense with personal service the substitute that is most likely to reach the defendant is the least that ought to be required if substantial justice is to be done. We repeat, also, that the ground for giving subsequent effect to a judgment is that the court rendering it had acquired power to carry it out; and that it is going to the extreme to hold such power gained even by service at the last and usual place of abode."

In *Grote v. Rogers*, 158 Md. 685, 149 Atl. 547, the court said:

" * * * The sources of information to which the plaintiff is thus referred by the statute may not apprise him of the defendant's correct address at the time when the notice is to be mailed. In the period, which may be prolonged, between the accident and the institution of the

suit, a legitimate change of the prospective defendant's domicile may render his earlier declarations as to his residence obsolete. The statute, nevertheless, imputes verity to a previously stated address which may be in fact erroneous at the date of the process. The serious and vital mistake of sending such a notice to the wrong address might be innocently committed in full and exact compliance with the act, while its terms readily admit of the perpetration of a fraud upon a defendant by the mailing of the notice to his formerly declared address, which may have been changed to the plaintiff's knowledge, but which may be within the purview of the statute's conclusive presumption of accuracy. In determining the question as to the constitutionality of the act, we must consider what may be done, and not merely what has occurred, under its provisions. *Curtis v. Mactier*, 115 Md. 386. The test of its validity, as against the objections urged in this case, is the inquiry whether it contains such requirements, with respect to the transmission of the notice, as to make it reasonably probable that the nonresident defendant will be informed of the suit by which he is sought to be personally affected. The concern and object of such a provision should be actual notice to the defendant, and its prescribed course of procedure should tend to ensure that result. In our opinion, the statute under discussion does not afford such an assurance. It fails to meet the test of reasonable probability that a compliance with its terms would give the defendant actual knowledge of the suit, and it is therefore invalid under the constitutional limitation which has been invoked. The clauses of the act in regard to notice are so materially and inseparably connected with its other provisions as to prevent a conclusion in favor of its partial validity. *Baltimore v. O'Connor*, 147 Md. 639."

In *Kurilla v. Roth,* 132 N. J. L. 213, 38 A. (2d) 862, the court said:

" * * * The object of all process is to impart to the

person affected notice of the proceeding and an opportunity to defend; and the sufficiency of the statutory substitute for personal service depends upon whether it is reasonably calculated to provide the defendant with notice of the action or proceeding and an opportunity to be heard.  * * * ."

We are not unmindful of the fact that courts of last resort of many states have held that procedures such as those had here and statutes bearing marked similarity to Chapter 75 are valid and not lacking in due process. Our reasoning and analysis of the problems presented lead us to contrary conclusions.

Here, the accident occurred September 29, 1961; suit was filed August 7, 1962, some ten months later. From the record it appears that Clemens, at the time of the accident, resided at 9121 Beechwood Drive, Thornton, Colorado; that at that time he was employed by Family Publication Service, whose district office is located at 1640 Welton Street, Denver, Colorado; that he left Colorado and went to Wyoming October 8, 1961; that he was in Tucumcari, New Mexico, from October 25, 1961, to November 20, 1961, and not since; that he is now a resident of Utah. On September 14, 1962, Whatleys filed with the court their verified motion giving the last known address of Clemens as "P. O. Box 1276, Vorenberg Hotel, Tucumcari, New Mexico," and that of Bowers as "215 - 6th Avenue, Aberdeen, South Dakota." On that date the court entered its ex parte order directing service of "the summons" on the secretary of state and directing that he "mail a copy of the same to the defendants at the above addresses." On September 17, 1962, the secretary of state mailed, registered mail, return receipt requested, to each defendant a "copy of summons and complaint, motion for service on secretary of state and order of the court." On September 18, 1962, he made his return. Bowers received the letter directed to her; Clemens never received the letter addressed to him. The

record does not shed any light on what may have become of the letter directed to Clemens.

Though Chapter 75 requires that the papers be sent by certified or registered mail, "with return receipt requested," it makes no provision as to the disposition to be made by the secretary of state of the "return receipt." The statute provides that the secretary of state shall "promptly" after such mailing certify as to the fact of mailing. It necessarily follows that if the secretary of state "promptly" makes his certificate of service, he will have done so before he could receive any "return receipt" as requested.

Here, proceeding under the statute, service was had on two defendants; one received notice, the other did not. Though the effectiveness of procedures prescribed for getting notice to defendants should not be finally adjudged on results obtained in an isolated case, the result here attained does cast grave doubt on the effectiveness of the methods provided and pursued.

Procedures only fifty percent effective cannot be held as reasonably calculated to bring notice to the defendant or to constitute due process.

We conclude that Section 8, Chapter 75, Session Laws 1961, providing for the method of service of process, is lacking in due process and is void. Though the statute does contain a severability clause, provisions of the act other than Section 8, standing alone, are without meaning, force or effect, and must fall with Section 8. Also the repealing clause, Section 2, Chapter 75, is invalid. The general rule is stated in 82 C.J.S., Statutes, § 281, pages 473, 474, as follows:

" * * * So where an act expressly repealing another act and providing a substitute therefor is found to be invalid, the repealing clause must also be held to be invalid, unless it shall appear that the legislature would have passed the repealing clause even if it had not provided a substitute for the act repealed."

Here the parties were never properly served with process. The attempted service did not subject the defendants to the jurisdiction of the court and the court's ruling to the contrary is erroneous.

The rule to show cause is made absolute and the plaintiffs restrained from proceeding further against the defendants until such time as the court acquires jurisdiction over them by proper process, duly served.

MR. CHIEF JUSTICE MCWILLIAMS and MR. JUSTICE MOORE dissent.