**In re the MARRIAGE OF Barbara B. EISENHUTH, Appellee,**

**and**

**Harold P. Eisenhuth, deceased, Appellant.**

**No. 98CA0573**

Colorado Court of Appeals,
Div. I.

March 18, 1999.

The Law Offices of Steven M. Segall, Steven M. Segall, Andrew D. Haas, Lakewood, Colorado, for Appellee.

Evan Freirich, Boulder, Colorado, for Appellant.

Opinion by Judge TAUBMAN.

In this dissolution of marriage proceeding between Harold P. Eisenhuth (husband) and Barbara B. Eisenhuth (wife), husband appeals from the permanent orders dividing marital property and from the denial of post-trial motions challenging that division. We affirm.

In June 1997, wife petitioned for dissolution of the couple's 33–year marriage. In July 1997, the couple's adult daughter was served with a copy of the summons and petition for husband, a licensed Colorado attorney, at his residence.

Although notice of the temporary orders hearing subsequently was mailed to husband, he failed to appear. Noting husband's non-appearance, the trial court found that husband had proper notice of the proceeding and that it had jurisdiction over the parties and the subject matter, and it then entered temporary orders. Husband filed no objection to the temporary orders.

In August, notice of the December permanent orders hearing was mailed to husband. Husband also was mailed interrogatories and a request for production of documents, to which he did not respond. None of the documents mailed to husband was returned as undeliverable.

When husband failed to appear at the December permanent orders hearing, the trial

court found him to be in default. The court then received evidence presented by wife and entered permanent orders based upon that evidence. Following entry of permanent orders, husband timely filed motions pursuant to C.R.C.P. 59 and C.R.C.P. 60, alleging that the court lacked personal jurisdiction to enter permanent orders pertaining to him and that wife had been awarded excessive property based upon evidence that constituted fraud and misrepresentation. The court denied husband's motions, and this appeal followed.

Following the submission of briefs, wife filed a suggestion of death stating that husband had died on January 10, 1999. To date, no personal representative of husband has moved to be substituted as a party pursuant to C.A.R. 43. Further, neither party has raised any issues as a result of husband's death. Accordingly, we address the issues presented in the parties' briefs.

## I.

■ Husband contends that the trial court erred by entering orders when it lacked personal jurisdiction over him because he had not been properly served pursuant to C.R.C.P. 4(e). We disagree.

■ As pertinent here, C.R.C.P. 4(e) allows personal service to be made upon an individual over the age of eighteen years by leaving a copy of the process at the individual's usual place of abode, with any person over the age of eighteen years who is a member of the individual's family.

■ The effectiveness of substituted service of process rests on the presumption that notice will be given in a manner which is reasonably calculated to impart knowledge to the person who is to be notified. *See Clemens v. District Court,* 154 Colo. 176, 390 P.2d 83 (1964).

■ In construing C.R.C.P. 4(e), we apply the same principles of interpretation applicable to statutory construction. If the rule is plain and unambiguous, we must apply it as written. *See People v. Fuqua,* 764 P.2d 56 (Colo.1988); *People v. Jackson,* 972 P.2d 698 (Colo.App.1998). However, if the language

of a rule is susceptible of different meanings, a court must attempt to ascertain the supreme court's intention in promulgating the rule so as to carry out its intended purpose. *See In re Marriage of Stumpf,* 932 P.2d 845 (Colo.App.1996). In doing so, the court may consider not only the language of the rule, but also the reason and necessity of the rule and the objective that the rule sought to accomplish. *See In re Marriage of Cargill,* 843 P.2d 1335 (Colo.1993).

■ Husband does not dispute that the summons and petition in this action were handed to his 25–year–old daughter, who was then visiting in his home. However, he argues that, because his daughter was no longer a member of his household, the service of process did not comport with the rule. In effect, husband argues that the word "family" in C.R.C.P. 4(e) is ambiguous and should be interpreted such that a family member accepting service must be at least 18 and must live in the household with the party being served. We agree with husband that the word "family" in C.R.C.P. 4(e) is ambiguous, but disagree with husband's construction of that term.

The word "family" has been interpreted by Colorado courts to have several different meanings. In *Fagan v. Troutman,* 25 Colo. App. 251, 265, 138 P. 442, 447 (1914), a division of this court concluded:

It seems to be generally conceded that ['family'] has several meanings. Its broadest one includes all those who are descended from a common progenitor—thus, of the same blood. In a less comprehensive sense, it means a collective body of persons living together and constituting one household under one head. In still a more limited sense, it means father, mother, and children.

*See Perkins v. Morgan,* 36 Colo. 360, 85 P. 640 (1906) (in context of determining meaning of "family expenses," court considered various definitions of "family"); *Turner v. United Cerebral Palsy Ass'n,* 772 P.2d 628 (Colo.App.1988) (in interpreting private restrictive convenant limiting housing to "private single family residential purposes," opinion noted that the term "family" can encompass more than the conventional biologi-

cal family and concludes that group home constituted a "single family" for purposes of the covenant).

■ If the supreme court had intended C.R.C.P. 4(e) to include a requirement that the family member accepting service must reside in the house with the party being served, it could have drafted the rule to contain language similar to its federal counterpart. *See Home–Stake Production Co. v. Talon Petroleum*, 907 F.2d 1012 (10th Cir. 1990) ("residing therein" language in federal counterpart to C.R.C.P. 4(e) requires the recipient of the papers to be living in the same place as defendant). While we turn for guidance to federal court opinions interpreting a substantially identical rule, *see Faris v. Rothenberg*, 648 P.2d 1089 (Colo.1982), so, too, may we draw significance from the *differences* between the language in a federal rule and that used in its Colorado counterpart.

Furthermore, serving the summons and petition on husband's 25–year–old daughter is a method we find likely to have imparted notice to him, and husband did not dispute that he had received notice of the proceedings. The record does not contradict that.

Accordingly, we conclude that the term "family" in C.R.C.P. 4(e) included husband's adult daughter who was visiting him at the time of service. Thus, we perceive no error in the trial court's finding that husband was properly served pursuant to C.R.C.P. 4(e) or in its resultant conclusion that it had personal jurisdiction over him. *See Clemens v. District Court, supra.*

## II.

■ We reject husband's contention that the trial court erred by denying his motion for relief from judgment pursuant to C.R.C.P. 60(b)(2) without considering evidence of wife's alleged fraud, misrepresentation, and misconduct concerning valuation of marital property.

■ Pursuant to C.R.C.P. 60(b)(2), a court may relieve a party from a final judgment on the basis of fraud, misrepresentation, or other misconduct of an adverse party. When considering this basis for seeking relief from a judgment, a court "must be mindful that there is a critical difference between perjury and the mere presence of factual conflicts or deficiencies in evidence." *Aspen Skiing Co. v. Peer*, 804 P.2d 166, 174 (Colo.1991).

In *Aspen Skiing Co.*, the supreme court observed that inconsistencies, contradictions, lapses of memory, and unexplained voids in the evidence frequently accompany hotly contested trials. These deficiencies, the supreme court noted, must be contrasted with perjury, which occurs when a witness testifies under oath to a materially false statement in an official proceeding, such as a trial, under circumstances in which the witness does not believe the statement to be true.

Thus, the *Aspen Skiing Co.* court held that the proponent of a motion for a new trial based on C.R.C.P. 60(b)(2) "must show that the discrepancies or inaccuracies in the prior testimony were not the result of the usual shortcomings inherent in human perception and memory but rather were the result of a willful fabrication of evidence bearing on a material issue." *Aspen Skiing Co. v. Peer, supra*, 804 P.2d at 174. This is so whether the relief sought is based on perjury, misrepresentation, or other willful misconduct.

Here, husband has not shown that the alleged discrepancies or inaccuracies in wife's testimony at permanent orders resulted from a willful fabrication of evidence. Although husband contends that the wife undervalued, omitted, or otherwise hid marital assets from the court at the permanent orders hearing, neither his motion nor his accompanying affidavit specifies any instance of willful fabrication of evidence. Rather, his affidavit is indicative of the usual conflicts in the valuation of assets presented at dissolution of marriage hearings.

Thus, in the absence of more specific allegations evidencing a willful fabrication of evidence by wife at the permanent orders hearing, the trial court did not abuse its discretion in denying husband's motion under C.R.C.P. 60(b)(2).

## III.

Husband next contends the trial court erred by denying his C.R.C.P. 59 motion, and thereby awarding wife an excessive portion

of the marital property and awarding certain financial assets to both parties. We disagree.

## A.

■ We reject husband's arguments that the property was not divided equitably. Pursuant to § 14–10–113, C.R.S.1998, a trial court has broad discretion in the division of property. *In re Marriage of Wells*, 850 P.2d 694 (Colo.1993). The division must be equitable, but need not be mathematically equal, *In re Marriage of Jaeger*, 883 P.2d 577 (Colo. App.1994), and when supported by competent evidence, it may not be disturbed upon review. *In re Marriage of Goldin*, 923 P.2d 376 (Colo.App.1996).

■ The trial court properly based its valuation of property upon the limited evidence before it, i.e., wife's testimony and financial affidavit. The determinations of property value and the sufficiency and credibility of the evidence are within the trial court's discretion, and they may not be disturbed unless they are unsupported by the record. *In re Marriage of Elmer*, 936 P.2d 617 (Colo.App.1997). Thus, because the record supports the trial court's valuation of the parties' property, we may not disturb it.

■ In reaching an equitable division of marital property, the court is required to consider the evidence before it. The court may not become a surrogate attorney for a party who has chosen not to appear before the court. *See Loomis v. Seely*, 677 P.2d 400 (Colo.App.1983). Therefore, contrary to husband's argument, the trial court did not abuse its discretion in failing to elicit evidence concerning: (1) husband's current earnings; (2) the use husband had made of funds he withdrew from a joint bank account before the hearing in view of evidence that wife had depleted another of the parties' several bank accounts; or (3) the classification of certain property as separate or marital.

The record contains evidence that husband was a licensed attorney, had worked throughout the 33–year marriage, and had accumulated substantial property. Further, the record shows that wife did not know husband's current earnings as of the date of the permanent orders hearing. The record also indicates that wife had depleted a joint bank account for payment of marital expenses and to provide support, as agreed by the parties, for their two children, who were attending separate law schools. Finally, there was no evidence that any of the property at issue was other than marital.

Further, the trial court considered the value of the property set aside to each spouse, as required by § 14–10–113(1)(b), C.R.S. 1998, to the extent that the value of such property was known. We also note that the court reserved jurisdiction with respect to any undisclosed property in husband's possession or control.

■ Wife was awarded property valued at approximately $718,000 and husband was awarded property valued at approximately $589,000, plus stock and a life insurance policy of unknown value. Although not equal, such a division is within the court's discretion, particularly when, as here, husband's lack of participation in the proceedings required the court to award shares of stock and a life insurance policy of unknown value. Moreover, while husband alleged fraud by wife in his affidavit accompanying his C.R.C.P. 59 and 60 motions, he did not indicate in such motions the value of either the stock or the life insurance policy. Under such circumstances, the trial court did the best it could in dividing the marital property, and husband may not now claim this division was inequitable.

We may presume that the trial court considered the evidence before it. *See In re Marriage of Udis*, 780 P.2d 499 (Colo.1989). Therefore, the court's property division reflects no abuse of discretion based upon husband's economic circumstances, the characterization of property as separate or marital, or wife's depletion of marital property.

## B.

Husband also contends that the trial court erred in awarding the same brokerage account to both parties.

Because this issue was not raised in the trial court, we may not consider it here. *See In re Marriage of Marson,* 929 P.2d 51 (Colo.App.1996). However, by appropriate motion after issuance of our mandate, the court may, in its discretion, receive additional evidence as to this issue. *See In re Marriage of Lee,* 781 P.2d 102 (Colo.App. 1989).

### IV.

We do not find this appeal to be frivolous and, therefore, deny wife's request for an award of costs and attorney fees under C.A.R. 38(d). *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993).

The judgment and the trial court's denials of husband's motions pursuant to C.R.C.P. 59 and C.R.C.P. 60 are affirmed.

Judge METZGER and Judge CASEBOLT concur.