23CA2204 Marriage of Vendetti 01-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2204
Fremont County District Court No. 23DR30021
Honorable Lynette M. Wenner, Judge

---

In re the Marriage of

John Michael Vendetti,

Appellee,

and

Michelle Ray Vendetti,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Grove and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

---

Knies Helland & McPherson Law, Alexander Masterson, Colorado
Springs, Colorado, for Appellee

The Harris Law Firm PLLP, Katherine O. Ellis, Denver, Colorado, for
Appellant

¶ 1    In this dissolution of marriage proceeding involving Michelle Ray Vendetti (wife) and John Michael Vendetti (husband), wife appeals from the property division entered as part of the district court's permanent orders.  We affirm in part, reverse in part, and remand the case with directions to redetermine the property division and revisit the denial of spousal maintenance and attorney fees.

## I.    Relevant Facts

¶ 2    The parties married in 2011 and separated in March 2023, when wife left the marital residence.  Shortly after, the parties filed a petition for dissolution.

¶ 3    During the marriage, wife worked for the United States Postal Service (USPS).  Husband managed the day-to-day operations of their jointly owned roofing company (marital business), and wife handled the bookkeeping.  In September 2023, the district court ordered that Amber Conover assume all bookkeeping responsibilities.

¶ 4     Two months later, the district court dissolved the marriage and issued written permanent orders.  The court made the following findings:

- Although wife was allowed to get an evaluation of the marital business, none was provided on time.

- It was unclear how wife arrived at a value of $325,000 for the marital business.

- Ms. Conover testified credibly that the business's books had not been adequately maintained for over a year and that wife appeared to lack the knowledge to manage them accurately.

- Both husband and Ms. Conover testified credibly about the marital business's value.  Their testimony established that the business primarily served as a source of income for husband and did not hold significant value beyond that.  Thus, based on their assessment, the business's value was $71,619, which included seven vehicles.

- Husband reported receiving a monthly salary of $7,000 from the marital business.  The evidence, however, suggested that his income was much lower historically.

2

- Wife's monthly salary from USPS was $4,328.

- Husband's subsequent appraisal of the marital residence provided a more accurate valuation than the joint expert's appraisal because it was more recent and correctly reflected the property's current condition.

- Wife's Federal Employees Retirement System (FERS) pension was worth $14,798 at the hearing, but the present-day value of the future marital interest was $177,448.

¶ 5    Based on those and other findings, the district court divided the marital estate and ordered husband to pay wife an equalization of $204,123.

| Marital Asset/Debt | Marital Value | Wife's Award | Husband's Award |
|---|---|---|---|
| Marital Business | $71,619 | | $71,619 |
| Marital Residence | $560,000 | | $560,000 |
| Wife's FERS Pension | $177,448 | $177,448 | |
| Wife's Thrift Savings Plan | $42,088 | $42,088 | |
| Husband's USAA Mutual Fund | $5,094 | | $5,094 |
| Bank Accounts | $8,993 | $8,222 | $771 |

| | | | |
|---|---|---|---|
| Vehicles | $78,653 | $45,345 | $33,308 |
| Debts | ($10,558) | ($10,558) | |
| SUBTOTAL | $933,337 | $262,545 | $670,792 |
| Equalization Payment | | $204,123 | ($204,123) |
| TOTAL | | $466,668 | $466,669 |

The court denied spousal maintenance, emphasizing wife's ability to meet her financial needs through her current employment and husband's inability to pay. Last, the court ordered each party to be responsible for their attorney fees.

## II. Property Division

¶ 6 Wife contends that the district court erred in its valuation of the marital business and residence, her pension, and by failing to allocate four vehicles. We address each argument in turn.

### a. Preliminary Issue

¶ 7 We first consider husband's argument that wife's appeal is barred because she "demanded the effectuation of the property division and benefitted from the [district] court's judgment." He is mistaken.

¶ 8      Generally, a party cannot accept the benefits of a judgment and seek reversal of that judgment on appeal. *In re Marriage of Zander*, 2019 COA 149, ¶ 5, *aff'd*, 2021 CO 12, ¶ 5; *In re Marriage of Jones*, 627 P.2d 248, 251 (Colo. 1981). But that rule is relaxed in dissolution of marriage cases. *See Zander*, ¶ 5; *see also In re Marriage of Powell*, 220 P.3d 952, 954 (Colo. App. 2009).

¶ 9      By "demanding" the equalization payment, wife did not accept the benefits of the district court's property division. Nor was this action inconsistent with the basis of her appeal. Thus, she is not deprived of her right to seek review of the property division. *See Powell*, 220 P.3d at 954; *see also In re Marriage of Antuna*, 8 P.3d 589, 592 (Colo. App. 2000) (the husband's acceptance of a court-ordered payment did not constitute a waiver of his right to appeal); *In re Marriage of Lee*, 781 P.2d 102, 105 (Colo. App. 1989) (the wife's acceptance of maintenance payments did not waive her right to appeal because public policy prohibits requiring a former spouse to choose between the necessities of life and the right to appeal).

## b. Standard of Review and Governing Law

¶ 10    The district court has considerable discretion to achieve an equitable property division, and we will uphold its decision absent an abuse of that discretion. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. The court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Id.*

¶ 11    We will not disturb the district court's valuation findings if they are reasonable in light of the competent evidence as a whole. *In re Marriage of Krejci*, 2013 COA 6, ¶ 23. The court may select the valuation of one spouse over that of the other spouse or make its own valuation, and the court's determination will be upheld on appeal unless clearly erroneous, meaning no evidence in the record supports it. *See id.*; *see also Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

## c. The Marital Business

¶ 12    We reject wife's first argument that the district court abused its discretion by valuing the marital business at $71,619 based on husband's testimony.

¶ 13    On October 6, 2023, wife moved for an evaluation of the marital business and asked that the cost be split evenly.  She indicated that the evaluation would be completed within ten days.  The court ordered that if she wanted the evaluation, she would have to pay for it.

¶ 14    Twenty days later, the district court held the permanent orders hearing.  Wife did not provide a business evaluation.  She explained that husband failed to timely give her a "management report," which she alleged was essential for finishing the evaluation.  She did not, however, request a continuance.  At the close of evidence, the court directed the parties to submit proposed permanent orders.

¶ 15    Wife appended to her proposed permanent orders a November 9, 2023, evaluation that assessed the marital business's worth at $1,382,000.  The district court granted husband's motion to strike the evaluation because the new evidence was offered too late.  On November 27, 2023, the court issued its written permanent orders, determining that the business had a value of $71,619.

¶ 16    Wife asserts that upon receiving the business evaluation, the district court should have sua sponte granted a new trial under

C.R.C.P. 59(c) or reopened the evidence. We disagree for two reasons.

¶ 17 First, C.R.C.P. 59 is inapplicable as the district court had yet to issue a final judgment when wife filed her proposed permanent orders. *See* C.R.C.P. 59(a) (authorizing relief from final or otherwise appealable judgments as provided in C.R.C.P. 58); *see also* C.R.C.P. 58 ("The term 'judgment' includes an appealable decree or order as set forth in C.R.C.P. 54(a)); C.R.C.P. 54(a) ("'Judgment' as used in these rules includes a decree and order to or from which an appeal lies."); *Przekurat v. Torres*, 2016 COA 177, ¶ 53 ("[A] C.R.C.P. 59 motion may only be filed to challenge a final order or judgment, not a non-final or interlocutory order or judgment."), *aff'd*, 2018 CO 69, ¶ 53.

¶ 18 Second, wife never requested to reopen the evidence. In her proposed permanent orders, she simply stated that the business was worth $1,382,000 and appended the business evaluation. Nor did she file a response to husband's motion to strike.[1] On appeal,

---

[1] Husband filed his motion to strike on November 13, 2023, and the court denied it fourteen days later. Although wife was not given the full twenty-one days to respond to husband's motion to strike

8

wife fails to cite any case law, and we can find none, *requiring* a district court, absent a motion by a party, to reopen the evidence before the entry of a dissolution decree and permanent orders. In fact, our review of the relevant case law shows just the opposite. *See People v. Hall*, 2021 CO 71M, ¶¶ 16, 24 (a district court is permitted to reopen a case and allow both parties to present additional argument, either following a party's motion or sua sponte, as long as "there is no prejudice to either party and, accordingly, justice is served") (citation omitted); *see also Medeiros*, ¶¶ 16, 22 (the district court has the legal authority to rule on a party's request to reopen a case before the entry of a dissolution decree and permanent orders based on alleged changed economic circumstances, but in doing so, must consider certain factors); *In re Marriage of McSoud*, 131 P.3d 1208, 1222 (Colo. App. 2006) (district court may in its discretion permit a party who has rested to reopen a case to present further evidence). Because wife did not request to reopen the evidence and there is no requirement that a court, on its

before the district court issued its ruling, she does not raise this as an issue. *See* C.R.C.P. 121, § 1-15(1)(b)).

9

own initiative, must do so, we cannot say that the court's decision was manifestly arbitrary, unreasonable, or unfair. *See Medeiros*, ¶ 28; *see also In re Marriage of Eisenhuth*, 976 P.2d 896, 901 (Colo. App. 1999) (the district court considers the evidence presented to it; it does not act as a surrogate attorney for the parties).

¶ 19 While wife insists that the district court should have continued the permanent orders hearing to allow her to complete the business evaluation given husband's admitted failure to timely provide an allegedly essential document, we decline to address this undeveloped argument. *See Zander*, ¶ 27 (an appellate court may decline to consider an argument not supported by legal authority or any meaningful legal analysis); *see also Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶ 40 (an appellate court will "decline to assume the mantle" when parties offer no supporting arguments for their claims).

¶ 20 Given our disposition, we need not resolve husband's assertion that wife failed to preserve this issue. *See In re Marriage of Mack*, 2022 CO 17, ¶ 12 (because a contention was unavailing, the appellate court need not decide whether it was preserved); *accord In re Marriage of Collins*, 2023 COA 116M, ¶ 48.

### d. Marital Residence

¶ 21     Wife challenges the district court's finding that the marital residence had a value of $560,000. We discern no error.

¶ 22     The record reflects that a joint appraiser assessed the marital residence at $600,000 as of June 2023. The joint appraiser indicated that the residence was well-maintained and in good condition. Later, husband obtained another appraisal. His appraiser opined that the residence was worth $560,000 as of August 2023, observing "some deferred maintenance" on the property.

¶ 23     Wife asked the district court to accept the higher value of $600,000, claiming that husband did not adequately maintain the marital residence. She described the residence as being in "gorgeous" condition when she vacated the property. Husband, on the other hand, asserted that the decrease in value was not due to his actions or inactions. He testified that the second appraisal corrected certain inaccuracies from the initial appraisal and was conducted closer in time to the current condition of the residence.

¶ 24     Ultimately, the district court sided with husband and valued the residence at $560,000. The court then allocated it to him.

¶ 25    Because there is evidence in the record to support the district court's finding that the residence was worth $560,000, we will not disturb it.  *See Krejci*, ¶ 23; *see also Van Gundy*, ¶ 12.

¶ 26    Still, wife argues that the district court did not address her "concerns" that husband depleted or dissipated the marital estate by "failing to care" for the marital residence during the proceedings. But we may presume that the court considered all the evidence before it, even if it did not make express findings regarding that evidence.  *See Collins*, ¶ 21.

### e. Wife's FERS Pension

¶ 27    Next, wife maintains that the district court erred by allowing husband, a lay witness, to render an expert opinion on the present-day value of her FERS pension, and by adopting that valuation.  We agree.

¶ 28    A district court has wide latitude in accepting or refusing evidence, and its rulings may only be overturned if there is a clear abuse of discretion.  *City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 610 (Colo. 2005); *see In re Marriage of Humphries*, 2024 COA

12

92M, ¶ 26 (a district court has broad discretion to determine the admissibility of expert testimony).

¶ 29    In determining whether testimony is lay testimony under CRE 701 or expert testimony under CRE 702, the district court must examine the basis for the opinion. *Grand Junction Peace Officers' Ass'n v. City of Grand Junction*, 2024 COA 89, ¶ 77 (quoting *Venalonzo v. People*, 2017 CO 9, ¶ 23).

¶ 30    Under CRE 701, lay witness testimony is limited to opinions or inferences that are (1) rationally based on the witness's perception; (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of CRE 702.  Thus, if the testimony relies on the witness's personal experiences or knowledge that an ordinary person could be expected to have, then it constitutes lay testimony.

¶ 31    By contrast, CRE 702 governs expert witness testimony, which is admissible if the witness is qualified by knowledge, skill, experience, training, or education, and if the testimony will help the trier of fact understand the evidence or determine a fact in issue.

Expert testimony "requires experience, skills, or knowledge that the ordinary person would not have." *Venalonzo*, ¶ 22.

¶ 32    Here, neither party called an expert to opine on the value of wife's FERS pension.

¶ 33    Wife testified that the pension's present-day value should be limited to $14,798.36 — the amount of contributions she had made up to the time of the hearing.

¶ 34    Husband, on the other hand, offered Exhibit 38 showing the present-day value of wife's FERS pension to be $177,448.  This figure was derived using a web-based calculator with the following inputs: $14,798.36 in annual payments, beginning in seventeen years and eight months, to be paid over twenty-three years, with an annual "investment interest rate" of 2.34%, and monthly payments commencing at the start of each month.  Wife objected to the exhibit, asserting that a qualified actuary was required.  *See In re Marriage of Zappanti*, 80 P.3d 889, 892 (Colo. App. 2003) (the valuation of future retirement payments is often the subject of expert testimony, usually provided by an actuary; *see also In re Marriage of Riley-Cunningham*, 7 P.3d 992, 994 (Colo. App. 1999) ("Under the net present value method, the [district] court, guided by

actuarial data, values the future benefit . . . .").  The district court admitted Exhibit 38.

¶ 35    Husband explained that once wife turns fifty-seven (in seventeen years and eight months), her annual retirement income would include the marital interest of $14,798.36.  He anticipated that if she lives to the age of eighty, she would receive $14,798.36 every year for twenty-three years totaling $340,362.  Then, by discounting wife's future payments using the "[thirty-]year average inflation rate" of 2.34%, he arrived at a present-day value of $177,448.

¶ 36    The district court, citing Exhibit 38, accepted husband's valuation.

¶ 37    We acknowledge the challenges the district court faced in valuing the present-day value of wife's FERS pension given the evidence, particularly in the absence of an expert witness.  We nevertheless conclude that the court abused its discretion by admitting and relying on husband's valuation, which was based on mere guesswork rather than competent evidence.  *See City of Aurora,* 105 P.3d at 610; *see also Eisenhuth,* 976 P.2d at 901 (the

district court must rely on competent evidence to ensure an equitable property division).

¶ 38    Husband's evidence exceeded the scope of permissible lay testimony. His valuation was a projection based on several assumptions such as wife's life expectancy, the investment return rate, and the inflation rate. His calculation necessitated specialized knowledge, skill, experience, training, or education which he did not have. *See* CRE 702; *see also Venalonzo*, ¶ 22. And there was no evidence to establish that multiplying the current marital interest by the number of years of expected payments and then applying either the investment return rate or the inflation rate would yield an accurate present-day value.

¶ 39    We therefore reverse this portion of the permanent orders and remand the case for the district court to reconsider the characterization and value of wife's FERS pension and redetermine an equitable property division. *See In re Marriage of Corak*, 2014 COA 147, ¶ 31; *see also Krejci*, ¶ 18. On remand, the court may take additional evidence concerning the value of the pension as of the date of the decree. *See In re Marriage of Mohrlang*, 85 P.3d 561, 564 (Colo. App. 2003); *see also* § 14-10-113(5), C.R.S. 2024

(property must be valued at the time of the decree or of the hearing on disposition, whichever is earlier).

### f. Vehicles

¶ 40    Wife asserts that the district court omitted a 1984 Toyota truck, purportedly worth $28,000. We agree.

¶ 41    In general, the district court must allocate all marital assets and debts. *See In re Marriage of Page*, 70 P.3d 579, 582 (Colo. App. 2003). And it must make sufficient findings concerning its allocation so that an appellate court can understand the basis of its ruling. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9; *cf. Powell*, 220 P.3d at 959 (stating that a court's property division findings must "allow the reviewing court to determine that the [court's] decision is supported by competent evidence"). "If property is omitted from permanent orders without explanation, the property division cannot stand." *In re Marriage of Rodrick*, 176 P.3d 806, 815 (Colo. App. 2007).

¶ 42    Husband testified that he owned a 1984 Toyota truck, having recently invested $9,400 for new axles and spent up to $14,000 on it during the marriage. While he did not include the truck in his

17

proposed permanent orders, wife did, valuing it at $28,000 and asking that husband keep it. The court did not allocate the truck in the permanent orders. We instruct the court on remand to characterize, value, and allocate the truck.

¶ 43    We reject wife's related assertion that the following vehicles were omitted from the property division: (1) a 2005 Wells Cargo trailer, purportedly worth $2,500; (2) a 1998 flatbed trailer worth $2,000; and (3) a 2007 CAT Skid and attachments, purportedly worth $25,000. The court found that those vehicles were part of the marital business; valued them at $2,000, $2,000, and $10,000, respectively; included them in the marital business's overall valuation; and awarded the marital business to husband.

## III.   Maintenance and Attorney Fees

¶ 44    Because we have reversed the district court's property division, we necessarily reverse its order regarding maintenance and section 14-10-119, C.R.S. 2024, attorney fees. *See In re Marriage of de Koning*, 2016 CO 2, ¶ 26 (when a district court is required to revisit a property division, it must also reevaluate maintenance and attorney fees in light of the updated property

18

division, because the issues are interdependent). The court must reconsider maintenance and attorney fees after it reconsiders its property division. *See Medeiros*, ¶ 62. In doing so, it must base its decision on the parties' financial circumstances at the time of the remand. *See In re Marriage of Stradtmann*, 2021 COA 145, ¶ 35 (because maintenance is based on the parties' financial circumstances at the time the order is entered, the court should consider the parties' current circumstances on remand).

## IV.   Appellate Attorney Fees

¶ 45    Husband argues that this appeal lacks substantial justification and seeks an award of his appellate attorney fees under C.A.R. 39.1 and section 13-17-102, C.R.S. 2024. Given our disposition, we deny his request.

## V.   Disposition

¶ 46    That part of the judgment regarding the values of the marital business and residence is affirmed. The portions of the judgment valuing wife's FERS pension, omitting the 1984 Toyota truck, and denying maintenance as well as attorney fees are reversed, and the case is remanded to the district court for further proceedings

consistent with this opinion.  The portions of the judgment not challenged on appeal remain undisturbed.

JUDGE GROVE and JUDGE LUM concur.