22CA2069 Marriage of Homoki 01-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA2069
Arapahoe County District Court No. 20DR31674
Honorable Cajardo Lindsey, Judge

---

In re the Marriage of

David J. Homoki,

Appellant,

and

Dahlia M. Homoki,

Appellee.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE GOMEZ
Fox and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 30, 2025

---

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellant

Anne Whalen Gill, LLC, Anne Whalen Gill, Castle Rock, Colorado; Law Office of Alexandra White, PC, Michael L. Cheroutes Jr., Centennial, Colorado, for Appellee

¶ 1 In this dissolution of marriage case between David J. Homoki (husband) and Dahlia M. Homoki (wife), husband appeals the portions of the permanent orders concerning the marital property division and maintenance. Husband also appeals the district court's correction pursuant to C.R.C.P. 60(a) of a portion of the marital property division. We affirm the judgment in part, reverse in part, and remand the case for further proceedings.

## I. Background

¶ 2 The parties married in 2007. **(CF p. 22)** In 2022, the district court dissolved their marriage and entered permanent orders. The marital estate consisted primarily of the marital home, which was valued at about $1.2 million, and multiple investment accounts totaling about $5.2 million.

¶ 3 As of the permanent orders hearing, husband, who wasn't formally employed due to ongoing, significant medical issues, generated about $100,000 per year via day-trading using the parties' investment accounts. Wife was a homemaker during the parties' marriage and wasn't employed as of the permanent orders hearing.

1

¶ 4    The district court awarded the marital home to husband but divided the various investment accounts between the parties. Specifically, the court allocated 75% of the value of husband's E-Trade account ending in "1594" and Ameritrade account ending in "1658" to wife, with the remaining 25% of each account allocated to husband. Conversely, the court allocated wife 25% of husband's Schwab account ending in "0521," with husband receiving the remaining 75%. The court classified the Schwab and Ameritrade accounts as retirement accounts and ordered their division using a Qualified Domestic Relations Order (QDRO).

¶ 5    In determining maintenance, the district court used husband's monthly day-trading income of $8,333 and imputed wife a monthly income of $2,177. The court found that wife qualified for maintenance and ordered husband to pay her $1,520.32 per month for eighty-seven months.

¶ 6    Wife later filed a motion pursuant to C.R.C.P. 59 seeking amendment of the marital property division because the district court had ordered the Ameritrade "1658" and Schwab "0521" accounts to be divided via a QDRO, even though the accounts weren't qualified retirement accounts. However, the district court

failed to rule on wife's motion within sixty-three days and the motion was deemed denied. Husband then filed a notice of appeal.

¶ 7 Over a year later, the district court sua sponte amended the permanent orders pursuant to C.R.C.P. 60(a). The court found that it had made a clerical error in requiring the Ameritrade "1658" and Schwab "0521" accounts to be divided via a QDRO, and accordingly, the court removed the QDRO requirement. The court also found that it had erroneously allocated husband's Wells Fargo "0515" bank account to wife even though the parties had agreed to allocate the account to husband, and, therefore, the court reallocated that account to husband.

## II. Marital Property Division

¶ 8 Husband asserts that the district court committed multiple errors when dividing the marital property in the original permanent orders and the court's later amendment of the permanent orders pursuant to C.R.C.P. 60(a). However, husband failed to preserve some of his contentions, and we don't otherwise perceive any error.

### A. Tax Implications

¶ 9 Husband first contends that the district court erred by dividing the parties' investment accounts without considering

potential tax consequences. We conclude that husband's contention is unpreserved.

¶ 10     "[I]ssues not raised in or decided by a lower court will not be addressed for the first time on appeal." *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18; *see also Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("A party's mere opposition to its adversary's request . . . does not preserve all potential avenues for relief on appeal. We review only the specific arguments a party pursued before the district court."). While "no talismanic language is required to preserve an issue" for appeal, *In re Estate of Owens*, 2017 COA 53, ¶ 21, a party must "raise[] an argument to such a degree that the court has the opportunity to rule on it," *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50; *see also In re Marriage of Aragon*, 2019 COA 76, ¶ 27.

¶ 11     Husband hasn't identified where in the record he raised the issue of the tax ramifications of dividing the investment accounts with the district court. *See* C.A.R. 28(a)(7)(A) (requiring the appellant to identify the "precise location in the record where the issue was raised"). And we are not persuaded that husband's

general presentation of his proposed marital property valuation and division raised the issue of tax implications "to such a degree that the court ha[d] the opportunity to rule on it." *Madalena,* ¶ 50.

¶ 12    Likewise, we reject husband's contention that he is merely challenging the district court's findings, which don't need to be specifically preserved for appeal. *See People in Interest of D.B.,* 2017 COA 139, ¶ 30. The district court didn't have a reasonable opportunity to consider and rule on the tax implications of dividing the investment accounts because neither party presented the court with evidence or argument on that issue. *See Madalena,* ¶ 50 (a party must have presented the "sum and substance" of the argument to the district court) (citation omitted); *cf. In re Marriage of Eisenhuth,* 976 P.2d 896, 901 (Colo. App. 1999) (the district court is required to consider the evidence presented to it; it doesn't act as a surrogate attorney). And we are unpersuaded by husband's argument that he couldn't have anticipated needing to bring such issues to the district court's attention, particularly given that wife's proposed marital property division — which she filed several days before the permanent orders hearing — split at least one of the investment accounts between the parties.

## B. Valuation of Investment Accounts

¶ 13    We next consider and reject husband's contention that the district court erroneously failed to address changes in the value of the investment accounts between the hearing and the issuance of the permanent orders several months later.

¶ 14    Per its obligation to assign an approximate value to the marital estate as of the date of the marital property hearing, *see In re Marriage of Wright*, 2020 COA 11, ¶ 4; § 14-10-113(5), C.R.S. 2024, the district court valued the investment accounts using figures wife provided at the permanent orders hearing. Then, consistent with wife's request that the parties both share in the risk or reward of any fluctuations in value occurring after the hearing, the district court allocated the investment accounts on a percentage basis rather than allocating to each party a specified dollar amount. Thus, we disagree that the court failed to account for fluctuations

in the value of the investment accounts occurring after the permanent orders hearing.[1]

C.    Amendment of the Permanent Orders under C.R.C.P. 60(a)

¶ 15    Husband also contends that the district court erred by correcting the permanent orders under C.R.C.P. 60(a).  We disagree.

¶ 16    Under C.R.C.P. 60(a), "[c]lerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party."  *See In re Marriage of McSoud*, 131 P.3d 1208, 1212 (Colo. App. 2006).  The rule "provides a safety valve by which courts can avoid the stubborn enforcement of an honestly mistaken judgment."  *Reasoner v. Dist. Ct.*, 594 P.2d 1060, 1061 (Colo. 1979).  Thus, "relief under C.R.C.P. 60(a) is limited to cases in which the trial court originally intended to make the award granted by corrective amendment."  *Diamond Back Servs., Inc. v. Willowbrook Water & Sanitation Dist.*, 961 P.2d

---

[1] We express no opinion on the district court's resolution of the multiple post-dissolution motions for entry of judgment wife filed regarding the division of the investment accounts, as husband's appeal doesn't encompass any orders resolving those motions.  *See* C.A.R. 3(d)(2)(B), (E) (requiring the appellant to identify the specific orders being appealed).

1134, 1136 (Colo. App. 1997) (C.R.C.P. 60(a) relief was appropriate when the district court inadvertently failed to include a component of damages it had intended to award); *cf. Jennings v. Ibarra*, 921 P.2d 62, 65 (Colo. App. 1996) ("C.R.C.P. 60(a) does not authorize amendment of a judgment to include interest in situations in which the trial court did not originally intend such an award.").

¶ 17     Corrections made pursuant to C.R.C.P. 60(a) are reviewed for an abuse of discretion, which occurs when the court acts in a manifestly arbitrary, unfair, or unreasonable manner.  *McSoud*, 131 P.3d at 1212.

¶ 18     We perceive no error in the district court's reliance on C.R.C.P. 60(a) to correct the permanent orders.  Before amending the permanent orders, the court issued a notice explaining that the permanent orders didn't reflect the court's original intent. Specifically, the court explained that it had inadvertently awarded the Wells Fargo "0515" account to wife, which contravened the consensus of the parties, and that its "intention was to simply order that the Schwab #[0]521 and Ameritrade #1658 accounts be divided between the parties, [meaning that] the requirement of a QDRO for division was simply a clerical error."  The court further clarified that

it didn't originally "find or believe that these accounts were qualified for purposes of a QDRO."

¶ 19    Because the district court had "originally intended to make the award granted by corrective amendment," *Diamond Back*, 961 P.2d at 1136, we conclude the court acted within the confines of C.R.C.P. 60(a) when amending the permanent orders. We also disagree with husband's assertion that the elimination of the QDRO requirement for dividing the Schwab and Ameritrade accounts somehow resulted in a reallocation of the marital estate. Indeed, the court's percentage division of those accounts remained unchanged between the original permanent orders and the C.R.C.P. 60(a) amendment.

¶ 20    Moreover, because the district court corrected the marital property division to conform to its original intent, we reject husband's claim that the court was also required to reconsider maintenance and attorney fees; the court's original intent as to those issues was already reflected in the permanent orders. Nor was the court required to revalue the marital estate when correcting the permanent orders, particularly given that section 14-10-113(5) expressly required the court to value the marital property as of the date of the hearing on the marital property.

### III. Maintenance

¶ 21    While we reject husband's challenge to the marital property division, we agree with him that the district court erred and made insufficient findings when awarding wife maintenance.

#### A. Standards of Review and Applicable Law

¶ 22    The district court has broad discretion in deciding the amount and duration of a maintenance award, and, absent an abuse of that discretion, its decision will not be reversed. *See* § 14-10-114(2), (3)(e), C.R.S. 2024; *Wright*, ¶ 15; *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 14.

¶ 23    Under section 14-10-114(3), the court must follow a specific process when awarding maintenance. *In re Marriage of Stradtmann*, 2021 COA 145, ¶ 28. "[T]he court must first make written or oral findings on each party's gross income, the marital property apportioned to each party, each party's financial resources, the reasonable financial need as established during the marriage, and the taxability of the maintenance awarded." *In re Marriage of Herold*, 2021 COA 16, ¶ 25; *see also* § 14-10-114(3)(a)(I).

¶ 24    Next, the court must determine the amount and term of maintenance, if any, that is equitable after considering the

statutory advisory guidelines and a list of non-exclusive statutory factors. § 14-10-114(3)(a)(II)(A), (3)(a)(II)(B), (3)(b), (3)(c); *Wright,* ¶ 15. Finally, before the court is permitted to award maintenance, it must find that the party seeking maintenance lacks sufficient property, including marital property apportioned to them, to provide for their reasonable needs and is unable to support themself through appropriate employment. § 14-10-114(3)(a)(II)(C), (3)(d); *Wright,* ¶ 16.

¶ 25    While the district court ultimately has discretion to enter a fair and equitable maintenance award, it must "make specific written or oral findings in support of the amount and term of maintenance awarded." § 14-10-114(3)(e); *see also In re Marriage of Gibbs*, 2019 COA 104, ¶ 9 ("The district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order."); *In re Marriage of Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998) ("Factual findings are sufficient if they identify the evidence which the fact finder deemed persuasive and determinative of the issues raised.").

## B.    Discussion

¶ 26    We agree with husband that the district court made insufficient findings in support of the $1,520.32 per month in maintenance awarded to wife.  Specifically, we are left without a clear understanding of the basis of the maintenance award because of the court's minimal findings concerning (1) wife's reasonable financial need as established during the marriage, *see* § 14-10-114(3)(a)(I)(D), and (2) whether wife, as the party seeking maintenance, lacked sufficient property, including marital property apportioned to her, to provide for her reasonable needs, *see* § 14-10-114(3)(d).  *See also Gibbs*, ¶ 9.

¶ 27    As to the parties' reasonable financial needs during the marriage, given a lack of evidence on the issue, the district court surmised that the parties enjoyed an upper-middle-class lifestyle based on the value of the marital home and the vehicles they owned.  Yet, beyond that basic description of the parties' lifestyle, the court made no other findings concerning the costs associated with the parties' reasonable financial needs.  And while wife cites the parties' respective sworn financial statements as indicative of

12

their reasonable financial needs, the district court also didn't make any findings based on those affidavits.

¶ 28     Given that it was the district court's role to make credibility determinations, as well as to synthesize and resolve any contradictions in the evidence, we decline wife's invitation to infer our own findings as to the parties' reasonable needs based on the record. *Cf. In re Marriage of Wollert*, 2020 CO 47, ¶ 23 (recognizing that "[f]actfinding is the basic responsibility of district courts, rather than appellate courts" because a "cold record is a poor substitute for live testimony" (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982), and *People v. Scott*, 600 P.2d 68, 69 (Colo. 1979), respectively)). Instead, the lack of findings as to the parties' reasonable financial needs leaves us unable to determine whether the court's award of $1,520.32 per month to wife was appropriate to meet wife's reasonable financial needs while also allowing husband to meet his own financial needs. *See* § 14-10-114(3)(a)(I)(D), (3)(c)(I), (3)(e); *Gibbs*, ¶ 9.

¶ 29     Likewise, we agree with husband that the district court made insufficient findings on the final, threshold issue of whether wife, as the party seeking maintenance, lacked sufficient property, including

marital property apportioned to her, to provide for her reasonable needs. *See* § 14-10-114(3)(d); *Wright*, ¶ 16. Critically, the court's only discussion of whether wife demonstrated such a threshold entitlement to an award of maintenance was a bare recitation of the statutory text and a conclusory statement that wife qualified for maintenance.

¶ 30    The lack of any detailed findings on whether wife met the threshold test for entitlement to maintenance under section 14-10-114(3)(d) again leaves us without a clear understanding of the basis for the maintenance award. *See Gibbs*, ¶ 9. Notably, wife was allocated over three million dollars in marital property. And while wife isn't required to deplete her share of the marital property in order to be entitled to maintenance, *see In re Marriage of Bartolo*, 971 P.2d 699, 702 (Colo. App. 1998), the court provided no explanation as to why wife's share of the marital estate, when considered in conjunction with her imputed income, was insufficient to meet her reasonable needs, *see* § 14-10-114(3)(d), which the court hadn't assigned a value to under section 14-10-114(3)(a)(I)(D).

¶ 31     We acknowledge that the district court could only make findings concerning reasonable financial need to the extent sufficient evidence was presented on it, which wife, as the party seeking maintenance, had the burden of presenting. *See* § 14-10-114(3)(d) ("[T]he court shall award maintenance only if it finds that the spouse seeking maintenance" lacks sufficient property or appropriate employment to provide for their reasonable needs.); *cf. W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (the burden of proof or persuasion on the essential elements of a claim remains with the plaintiff). But given the insufficient findings, we nonetheless conclude that the maintenance award cannot stand. *See Gibbs*, ¶ 9.

¶ 32     Accordingly, we reverse the maintenance award and remand the case for further proceedings. On remand, the district court must reconsider wife's request for maintenance using the procedure specified by section 14-10-114(3), making findings where required, and addressing the factors relevant to its determination. *See Herold*, ¶¶ 29-32; *Stradtmann*, ¶¶ 33-35. The court must make sufficiently explicit findings of fact to give us a clear understanding of the basis of its order. *See Wright*, ¶ 20; *Gibbs*, ¶ 9. Because

maintenance is based on the spouses' financial circumstances at the time an order is entered, the court on remand must consider the parties' current financial circumstances, which means it must take additional evidence. *See Wright*, ¶ 24; *Stradtmann*, ¶ 35.

C.    Husband's Other Contentions Concerning Maintenance

¶ 33    Given that the district court must reconsider maintenance based on the parties' current financial circumstances, *Wright*, ¶ 24; *Stradtmann*, ¶ 35, we decline to consider husband's additional contentions that the court erred (1) by finding that he earned $100,000 per year because his income was generated by the investment accounts, over half of which were allocated to wife, and (2) by failing to attribute to wife the income she could earn on her portion of those investment accounts. To the extent that husband's income has been reduced and wife's has been increased because of the marital property division, the parties may present the court with relevant evidence on remand. *See* § 14-10-114(8)(c)(I)(F), (K), (N) (including dividends, interest, and capital gains within the definition of "gross income" for maintenance purposes).

¶ 34    However, because the issue may arise on remand, we consider and reject husband's contention that the district court failed to

16

consider, as temporary maintenance, the $80,000 he paid to wife during the pendency of the dissolution proceedings. *See* § 14-10-114(3)(c)(VIII). The parties unambiguously stipulated that the $80,000 payment, which was ultimately accounted for in the marital property division, was an advanced distribution of marital property to wife. The additional $22,500 husband paid wife during the pendency of the proceedings likewise was part of the parties' stipulated marital property division; and to the extent that the court didn't include this sum in the property division, its omission is de minimis. *See* C.R.C.P. 61; *In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001) ("If . . . a trial court's error affects only a small percentage of the overall marital estate, such an error may be deemed to have been harmless and thus does not require reversal.").

## IV. Appellate Attorney Fees

Wife requests an award of her appellate attorney fees on the ground that husband's appeal was vexatious and stubbornly litigious. *See* § 13-17-102(4), (9)(a), C.R.S. 2024. Given our disposition, we deny this request. *See In re Marriage of Martin*, 2021 COA 101, ¶ 42.

¶ 36    Both parties request an award of their appellate attorney fees under section 14-10-119, C.R.S. 2024, due to the alleged disparities between their respective economic circumstances.  Because the district court is better equipped to determine the factual issues regarding the parties' current financial resources, we direct it to address these opposing requests on remand.  *See* C.A.R. 39.1; *In re Marriage of Schlundt*, 2021 COA 58, ¶ 54.

## V.    Disposition

¶ 37    The portions of the judgment concerning the marital property division are affirmed.  The portions of the judgment concerning maintenance are reversed, and the case is remanded to the district court to reconsider and make additional findings regarding wife's request for maintenance and to consider the parties' opposing requests for appellate attorney fees under section 14-10-119.  The remaining portions of the judgment that were not appealed remain undisturbed.

        JUDGE FOX and JUDGE LUM concur.